UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ANDREW RUSSO, *et al*,

Defendants.

**MEMORANDUM & ORDER**
21-CR-00466 (HG) (JRC)

**HECTOR GONZALEZ**, United States District Judge:

On April 13, 2022, a grand jury returned a 21-count superseding indictment ("Superseding Indictment") charging fifteen defendants with offenses arising from various criminal schemes carried out by alleged members and associates of the Colombo organized crime family of La Cosa Nostra. ECF No. 286. Four defendants charged in the Superseding Indictment—Albert Alimena, Joseph Bellantoni, Theodore Persico, Jr., and Erin Thompkins (together, the "Moving Defendants")—have moved pursuant to Federal Rule of Criminal Procedure 14 for severance. *See* ECF Nos. 382, 411. For the reasons set forth below, the motions for severance are denied in their entirety.

## BACKGROUND

The Court assumes familiarity with the background of this case, *see generally United States v. Russo*, No. 21-cr-466, 2023 WL 2477664, at *5 (E.D.N.Y. Mar. 13, 2023), and only briefly discusses the relevant facts and procedural history.

*A. Factual Background*

The Superseding Indictment charges defendants with, among other things, racketeering under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), extortion, a conspiracy to commit money laundering, health care fraud, loansharking, fraud in connection with

identification documents, drug trafficking, making false statements, and unlawful possession of firearms and ammunition in furtherance of several criminal schemes. *See generally* ECF No. 286. From 2001 to September 2021, various defendants were allegedly involved in a scheme to "infiltrate, extort, and illegally divert funds" from a labor union ("Labor Union"). ECF No. 419 at 6. One of the intended victims of the extortion scheme was John Doe #1, a senior official of the Labor Union and a trustee for the Labor Union's employee welfare benefit fund (the "Health Fund"), that provided medical benefits, including dental, optical and pharmacy benefits, to Labor Union members and other qualifying plan participants.

According to the Superseding Indictment, from approximately November 2020 to September 2021, several defendants including Alimena, Bellantoni, Benjamin Castellazzo, Ralph DiMatteo, Persico, Vincent Ricciardo,[1] Thompkins and Michael Uvino, together with others, devised a scheme to "launder funds derived from extortion of the Health Fund and the theft and embezzlement of the Health Fund's assets." ECF No. 286 at 8. The government alleges that Defendants Ricciardo and Uvino, captains of the Colombo crime family, "used extortionate means to attempt to force officials at the Labor Union and Health Fund to award vendor contracts to service providers who had agreed (as part of receiving the contracts) to pay kickbacks and divert funds to the Colombo crime family." ECF No. 419 at 7.

In order to execute the extortion scheme, Ricciardo arranged for Alimena "to take over as the Health Fund's third-party administrator." *Id.*; *see also* ECF No. 286 at 32 ("On or about March 5, 2021, Alimena sent an email to John Doe #1 indicating Alimena's intent to submit a bid to become the Health Fund's third-party administrator."). As third-party administrator,

---

[1] Another Defendant, Domenick Ricciardo, was originally charged in the Superseding Indictment, but has since pled guilty. Unless otherwise noted, any reference to "Ricciardo" in this Order is to Vincent Ricciardo, unless otherwise noted.

Alimena would have been responsible for awarding vendor contracts to service providers. In exchange for agreeing to become third-party administrator, Alimena's company would allegedly earn $1.1 million so long as he ensured that the Health Fund paid a $10,000 monthly kickback to the Colombo crime family. ECF No. 419 at 7–8. Co-Defendant Thompkins was Ricciardo's girlfriend and worked as Alimena's administrative assistant. *Id.* at 8. The government alleges that she was fully aware of the scheme and was involved in discussions concerning prices that a fund administrator could charge each plan participant. ECF No. 286 at 33. Bellantoni allegedly "pre-selected vendors who were to take over existing Health Fund contracts on the promise of kickbacks," including arranging meetings with potential vendors and attorneys for the Labor Union, as well as discussing the manner and frequency of kickbacks. ECF No. 419 at 9; *see also* ECF No. 286 at 34.

    B.  *Procedural History*

On April 13, 2022, a grand jury returned the Superseding Indictment. ECF No. 286. As of the date of this Order, charges are pending against eight defendants: (1) Castellazzo; (2) DiMatteo; (3) Persico; (4) Ricciardo; (5) Uvino, all of whom are charged with racketeering, among other offenses (together, the "RICO Defendants"); as well as (6) Alimena; (7) Bellantoni; and (8) Thompkins. The Moving Defendants share the following charges: money laundering conspiracy, conspiracy to steal and embezzle health care benefits, health care fraud conspiracy, and attempted health care fraud. *Id*. at 30–36.

On November 14, 2022, Persico moved to sever his trial from Defendants Ricciardo and Uvino.[2] ECF No. 382 at 53. Alternatively, Persico moves to sever his trial from the specific

---

2    Defendant Persico has also moved to sever his trial from Defendants Thomas Costa, John Glover, Vincent Martino, John Ragano and Domenick Ricciardo. ECF No. 382 at 53. However,

counts in which he is not named as a defendant. *Id.*

On January 27, 2023, Defendants Alimena, Bellantoni and Thompkins moved together to sever their trial from the RICO Defendants. ECF No. 411. On February 10, 2023, the government filed its opposition to the severance motions. ECF No. 419.

## **LEGAL STANDARD**

Federal Rule of Criminal Procedure 8 permits the government to join multiple defendants in an indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." "In the federal system, there is a preference for joint trials of defendants who are indicted together because joint trials promote efficiency and help avoid the problem of inconsistent verdicts." *United States v. Brown*, No. 20-cr-293, 2022 WL 4238459, at *15 (E.D.N.Y. Sept. 14, 2022).[3] However, Rule 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment . . . for trial appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Nevertheless, "severance is appropriate only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Brown*, 2022 WL 4238459, at *16; *see also Zafiro v. United States*, 506 U.S. 534, 540 (1993) ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.").

---

each of these Defendants has since pled guilty. *See* Minute Entries for Proceedings dated November 28, 2022, November 29, 2022, December 12, 2022, and December 14, 2022.

[3] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

4

"To succeed on a motion for severance, a defendant must meet the *heavy burden* of showing that a joint trial would result in *substantial* prejudice amounting to a miscarriage of justice." *Brown*, 2022 WL 4238459, at *16 (emphasis added). The Court considers a number of factors "in determining whether the prejudice of a joint trial rises to the level of a miscarriage of justice" including: "the number of defendants and the number of counts; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; disparities in the degrees of involvement by defendants in the overall scheme; possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987).

However, "just because evidence may only be admissible against one defendant, and not another, severance is not necessarily warranted. Indeed, even in those circumstances where the risk of prejudice is high, less drastic measures—such as limiting instructions—often suffice to cure any risk of prejudice. The prejudice inquiry is highly fact-specific and must be evaluated on a case-by-case basis." *Brown*, 2022 WL 4238459, at *16. The preference for joint trials is "particularly strong (and the basis for severance is particularly weak) where codefendants are alleged to have participated in a common plan or scheme. Specifically, in cases brought under [RICO], the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless." *Id.* Nonetheless, the trial court has considerable discretion in reviewing and determining severance motions. *See United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (finding that denials of severance motions are reviewed for "abuse of discretion").

5

**DISCUSSION**

**I.    The Non-RICO Defendants' Motion to Sever Is Denied**

Defendants Alimena, Bellantoni and Thompkins (together, the "Non-RICO Defendants") move to sever their trial from the RICO Defendants arguing that there is potential for spillover prejudice because: (i) the government's case against the RICO Defendants will "entail the introduction of enterprise evidence"; (ii) a joint trial would require non-RICO Defendants to endure weeks of testimony that has "no bearing on the charges against them"; and (iii) the Non-RICO Defendants' charges are non-violent, whereas the RICO Defendants allegedly extorted a senior official of the Labor Union through threats of violence. ECF No. 411 at 4–6. The government contends that the Non-RICO Defendants are a "critical part of the central scheme" to extort the Health Fund because they were allegedly "the source of the expected profit from the Health Fund's accounts." ECF No. 419 at 24. The government further argues that although the Non-RICO Defendants were not charged with racketeering, the evidence at trial will "establish that they worked hand-in-hand with members of [La Cosa Nostra]" and that their conduct is "inextricably intertwined with the Colombo crime family's efforts to take over the Labor Union and Health Fund." *Id.*

"Claims of prejudicial spillover seldom succeed, particularly when the 'prejudicial spillover' claim is advanced by a defendant who is charged, along with other defendants, with conspiracy or RICO Act violations." *United States v. Gambino*, 784 F. Supp. 129, 135–36 (S.D.N.Y. 1992). Here, the Non-RICO Defendants' "spillover prejudice" arguments fail for several reasons. Initially, although Alimena, Bellantoni and Thompkins are not charged with RICO, they have been charged with multiple conspiracies related to the Health Fund and Labor Union extortion scheme, all of which are key components of the RICO charge. "[T]his is not a

case where the alleged RICO enterprise involves predicate offenses that vary substantially in nature." *United States v. Webb*, No. 15-cr-252, 2020 WL 6393012, at *7 (E.D.N.Y. Nov. 1, 2020). Rather, the alleged underlying RICO conduct includes the same schemes involving money laundering and healthcare fraud. The alleged conduct of the Non-RICO Defendants in furtherance of these schemes was critical to the Colombo crime family's attempt to infiltrate, corrupt, launder funds, and extort the Health Fund and Labor Union. These actions allegedly include, among other things: (i) Alimena attempting to become the Health Fund's third-party administrator in order to award vendor contracts to service providers approved by the Colombo crime family in exchange for payment, ECF No. 419 at 7–8; (ii) Bellantoni coordinating meetings with and pre-selecting vendors who were expected to take over existing Health Fund contracts in exchange for kickbacks to the Colombo crime family, *id.* at 9; and (iii) Thompkins participating in discussions concerning the price Alimena could charge as third-party administrator, ECF No. 286 at 33. The Non-RICO Defendants' actions were undoubtedly critical and integral to the racketeering enterprise, even if they themselves are not members of the Colombo crime family. Accordingly, the introduction of "enterprise evidence" is not a sufficient basis for severance and the Court does not find that such evidence amounts to prejudice. *See Webb*, 2020 WL 6393012, at *7 ("Where the alleged RICO enterprise involves underlying crimes of a similar nature, courts in this circuit have found insufficient prejudice to grant severance, even with respect to defendants not charged in the alleged overarching RICO enterprise.").

      The Non-RICO Defendants further argue that their charges are non-violent and as such, discussion of the RICO Defendants' violent behavior in conjunction with their racketeering acts is prejudicial. The Court disagrees.

7

> [D]iffering levels of culpability and proof are inevitable in any multidefendant trial and, standing alone, are insufficient grounds for separate trials. Indeed, not only are joint trials constitutionally permissible when they place defendants who are marginally involved alongside those heavily involved; they are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal conspiracy.

*United States v. Delgado*, 972 F.3d 63, 81 (2d Cir. 2020). Relatedly, given the critical nature of the Non-RICO Defendants' contributions to the conspiracy to defraud the Health Fund and Labor Union, a separate trial would be inefficient and a waste of judicial resources because much of the same evidence and testimony would have to be presented again. *See United States v. Spinelli*, 352 F.3d 48, 55–56 (2d Cir. 2003) ("[M]uch of the evidence about [defendant's] crimes would have been admissible at a separate trial of [co-defendant], since it was relevant to proving the nature and scope of the conspiracy in which both were, to differing degrees, involved."); *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983) ("[T]he fact that evidence may be admissible against one defendant but not another does not necessarily require a severance.").

       Finally, the Court accepts the government's representation that the evidence at trial will focus mainly on the scheme to defraud the Health Fund and Labor Union. ECF No. 419 at 28. The additional criminal schemes alleged in the Superseding Indictment, which include loansharking, drug-trafficking, false statements, and possession of ammunition, ECF No. 286 at 24–28, 37–39, are easily distinguishable from the scheme to defraud the Health Fund and Labor Union. Accordingly, "remedies short of severance can mitigate or eliminate any potential prejudice, such as evidentiary limitations and curative instructions." *See Webb*, 2020 WL 6393012, at *8; *see also Zafiro*, 506 U.S. at 539 ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."). If necessary, the Court will explicitly instruct the jury that although the defendants are being tried together, it must give separate consideration to each defendant, and must determine which evidence in the case applies

to each defendant, disregarding any evidence admitted solely against other defendants.  *See Spinelli*, 352 F.3d at 55 (finding that spillover prejudice can be remedied through judicial instructions).

In sum, the Court finds that the Non-RICO Defendants have not met their "heavy burden" of establishing "substantial prejudice amounting to a miscarriage of justice."  *Brown*, 2022 WL 4238459, at *16.

## II.  Defendant Persico's Motion to Sever is Denied

Defendant Persico argues that the length and complexity of the trial, given the number of defendants, is prejudicial.  ECF No. 382 at 50–53 ("A mega-trial would substantially prejudice Mr. Persico.").  Persico moves to sever his trial from Defendants Ricciardo and Uvino, or alternatively from the specific counts in which he is not named as a defendant.  ECF No. 382 at 53.  The government contends that Persico fails to meet his burden of showing substantial prejudice in light of his involvement in the RICO enterprise.  ECF No. 419 at 18–24.  The Court agrees.

As an initial matter, many of Persico's concerns regarding a "mega-trial," including the length of the trial and the ability of the jury to follow along, are now moot given that only eight defendants remain in the case.[4]  *See supra* n.2; *see also Brown*, 2022 WL 4238459, at *20 (finding that trial of nine defendants did not warrant severance); *United States v. Diaz*, 176 F.3d 52, 73 (2d Cir. 1999) (affirming decision to deny severance of trial with nine defendants).

---

[4]     Defendant Persico also argues that a mega-trial is prejudicial because he has been detained without bail since September 2021.  ECF No. 382 at 53.  Defendant Persico's pretrial detention, however, does not warrant severance.  *See United States v. Guzman*, No. 11-cr-1015, 2013 WL 3305308, at *2 (S.D.N.Y. July 1, 2013) ("[C]ourts [in this Circuit] have repeatedly found that delays in multi-defendant cases are reasonable and insufficient to warrant severance.").

9

More importantly, however, Defendant Persico is alleged to be intimately involved with the RICO enterprise and has been charged with three out of the six racketeering acts, including the conspiracy to extort and defraud the Labor Union and Health Fund. ECF No. 286 at 6, 10–19 (alleging Persico "was a captain and soldier within the Colombo crime family"). As discussed previously, the Court accepts the government's representation that the trial will focus mainly on the scheme to defraud the Health Fund and Labor Union. ECF No. 419 at 28. Persico's motion to sever his trial from Defendants Ricciardo and Uvino, both of whom have also been charged with racketeering, "would impair both the efficiency and the fairness" of the trial by requiring two substantially identical trials concerning the same evidence to extort and defraud the Labor Union and Health Fund. *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). "To the extent some evidence will only relate to [Defendant Persico] and some only to [Defendants Ricciardo and Uvino], the outcome is the same, as a defendant is not entitled to severance simply because the evidence relates only to his co-conspirators." *United States v. Khmelnitski*, No. 10-cr-459, 2012 WL 482022, at *2 (E.D.N.Y. Feb. 14, 2012).

Persico's motion to sever his trial from the specific counts in which he is not named as a defendant is equally unpersuasive. Joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts" especially in trials concerning conspiracies or RICO. *Zafiro*, 506 U.S. at 537; *see also United States v. Persico*, 621 F. Supp. 842, 854 (S.D.N.Y. 1985) ("To compel the government to attack [an] alleged organization through seriatim trials would frustrate the intent of RICO by failing to provide juries with a complete picture of the business or needlessly compel duplicate presentations of evidence and endanger witnesses."). Any potential prejudice to Persico as a result of testimony concerning counts in which he is not named can be minimized using measures such as limiting

10

instructions.  *Zafiro*, 506 U.S. at 539; *see also supra* Section I.  Accordingly, the Court denies Persico's motion to sever.

## CONCLUSION

For the reasons set forth herein, the motions to sever are DENIED in their entirety.

SO ORDERED.

                                                          */s/ Hector Gonzalez*
                                                            HECTOR GONZALEZ
                                                            United States District Judge

Dated: Brooklyn, New York
        May 9, 2023